UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal Action No. 5: 16-067-DCR |
| ) | |
| V. ) | |
| ) | |
| STANFORD COLEMAN, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Stanford Coleman was sentenced to 340 months' imprisonment in March 2018 after a jury convicted him of conspiring to distribute oxycodone. The matter is pending for consideration of Coleman's second motion for compassionate release. [Record No. 167] Coleman previously filed a motion for compassionate release in March 2021, arguing that his underlying health conditions, combined with the COVID-19 pandemic, constituted extraordinary and compelling circumstances warranting a sentence reduction. The Court denied that motion, finding that neither these factors nor the factors considered under 18 U.S.C. § 3553(a) supported a sentence reduction. The United States Court of Appeals for the Sixth Circuit affirmed that determination on appeal.

Coleman's current motion raises similar health-related arguments, as well as legal claims he believes entitle him to a sentence reduction. Notably, he contends that, if he were sentenced today, he would not be considered a career offender under the United States Sentencing Guidelines. *See United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (en banc) (per curiam). Thus, he would receive a lesser period of incarceration. However, as the Sixth

- 1 -

Circuit recently held, nonretroactive legal developments do not factor into the determination of whether extraordinary and compelling circumstances for compassionate release exist. *United States v. McCall*, --F.4th--, 2022 WL 17843865 (6th Cir. Dec. 22, 2022) (en banc). Because Coleman has again failed to identify any extraordinary or compelling reason for granting a sentence reduction, his present motion will be denied.

## I.

A defendant seeking compassionate release must demonstrate that "extraordinary and compelling reasons warrant" a sentence reduction. *United States v. Jones*, 980 F.3d 1098, 1107-08 (6th Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)(i)). In addition, the Court considers any applicable factors under § 3553(a) in determining whether a sentence reduction is warranted, in whole or in part, under the circumstances of a particular case.[1] *Id.* at 1108 (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)). District courts may deny motions for compassionate release when either of these prerequisites is lacking and need not address the other. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

The Court previously determined that the factors to be considered under 18 U.S.C. § 3553(a) did not support granting a sentence reduction in this case. [*See* Record No. 154, pp. 4-6.] Regardless, the Court has again considered the arguments in Coleman's current motion and finds that extraordinary and compelling reasons for a sentence reduction do not exist.

---

[1] The Court also must find that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* at 1108. However, no policy statement applies when a defendant, rather than the Bureau of Prisons ("BOP"), files a compassionate-release motion, so this step in the analysis is omitted.

## II.

Coleman is currently housed at Hazelton FCI in Bruceton Mills, West Virginia. His projected release date is July 2, 2041.[2] Coleman's arguments concerning his medical conditions and the COVID-19 pandemic have not changed significantly since his previous motion. He again focuses heavily on the alleged spread of COVID-19 throughout BOP facilities and the BOP's alleged failure to respond appropriately. Coleman claims that his age (now 51 yrs.) and his diagnoses of obesity, hypertension, hyperlipidemia, and peripheral vascular disease increase his susceptibility to contracting COVID-19 and to suffering severe illness from it.

Coleman further reports that ACE inhibitor medication he is prescribed "make[s] patients more susceptible to contracting and succumbing to COVID-19." [Record No. 167, p. 25] And he suggests that COVID-19 vaccines are not as effective in obese individuals compared to those who are not obese. *Id.* p. 23. Further, the Centers for Disease Control recognizes that conditions such as obesity, hypertension, and coronary artery disease may increase the likelihood of severe illness from COVID-19.[3] However, the risks associated with the COVID-19 virus can be significantly ameliorated by vaccination. *See also United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021).

Coleman's medical records reveal that Coleman refused to receive COVID-19, Tdap, and influenza vaccinations. "[D]efendants may not perpetuate their own extraordinary and

---

[2] Federal Bureau of Prisons, *Find an inmate*, https://www.bop.gov/inmateloc/ (last accessed Dec. 27, 2022).

[3] Centers for Disease Control and Prevention, *People with Certain Medical Conditions,* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated Dec. 6, 2022).

compelling circumstances for compassionate release by declining [the Bureau of Prison's] attempt to protect them." *United States v. Kennedy*, 2022 WL 431187, at *2 (6th Cir. 2022). In his motion for compassionate release, Coleman did not disclose that he had refused the COVID-19 vaccine, let alone provide justification for refusal.

After the United States pointed out his refusal, Coleman tendered a reply asking the Court to "relieve him, as to the vaccination refusal, due to the fact the theological legitimacy of a particular 'religious practice,' a 'matter of faith,' and not of legal proof" and describing the vaccine as "religiously un-acceptable." [Record No. 184, p. 14] In *United States v. Brownlee*, 2022 WL 35404, at *2 (6th Cir. Jan. 4, 2022), the Sixth Circuit proposed that a sincerely held religious objection might justify an inmate's refusal to receive the COVID-19 vaccine. While the *Brownlee* court did not elaborate on how district courts might evaluate such objections in this context, it is clear that Coleman has failed to provide even the barest explanation. Specifically, he has neither identified his religious belief nor explained why it prevents him from being vaccinated. Under these circumstances, the defendant may not "conjure an extraordinary and compelling circumstance—by declining a readily available and overwhelmingly significant preventative measure." *United States v. Moore*, 2021 WL 3666319, at *3 (D. Ariz. Aug. 18, 2021).

Further, medical records indicate that Coleman has been treated regularly by BOP medical staff for his reported health problems and that they are well controlled. He is prescribed various medications but, on March 24, 2022, staff discovered that Coleman was hoarding medication rather than take it as directed. A March 31, 2022, Clinical Encounter Administrative Note documented a staff member's suspicion that Coleman was failing to follow his recommended treatment "to make his condition appear uncontrolled and not

effectively managed, thereby enhancing his ability to be released for compassionate release or CARES Act."

Coleman makes a vague allegation that his medical conditions limit his ability to function within the correctional setting. [Record No. 167, p. 19] He also cites unspecified mental issues, which the Court described at sentencing as having a personality disorder with narcissistic traits. The undersigned recommended that Coleman participate in a mental health treatment program during his term of incarceration. It is unclear whether Coleman has done so, but his medical records for the past two years do not indicate any mental health disturbance or need for treatment.

Coleman advances a few legal arguments, as well. Most notably, he argues that if he had been sentenced after the Sixth Circuit's decision in *Havis*, 927 F.3d 382, he would not have been considered a career offender under § 4B1.1 of the guidelines and would have received a substantially lower sentence. In *Havis*, the Sixth Circuit held that attempted drug-trafficking offenses are not controlled substance offenses sufficient to trigger the career offender enhancement under § 4B1.1. However, it recently held in *McCall*, 2022 WL 17843865, at *15, that nonretroactive legal developments, such as that in *Havis*, do not factor into the extraordinary and compelling analysis.

Coleman also expresses general dissatisfaction with § 4B1.1 of the guidelines, arguing that the provision is "not the product of [e]mpirical data and [n]ational experience." [Record No. 167, p. 5] But one defendant's disagreement with a guidelines provision on policy grounds certainly cannot be considered an extraordinary and compelling reason for a sentence reduction. The same is true for Coleman's argument regarding alleged disparities between federal and state sentences. Even if the guidelines ultimately were amended to be more in line

with Coleman's views, "prospective changes in federal sentencing law are far from an extraordinary event." *McCall*, 2022 WL 17843865, at *6; *United States v. Crandall*, 25 F.4th 582, 586 (8th Cir. 2022) (observing that "[t]he compassionate release statute is not a freewheeling opportunity for resentencing based on prospective changes in sentencing policy or philosophy.").

Finally, Coleman argues that his rehabilitative efforts, in conjunction with the previously-described factors, constitute compelling and extraordinary reasons for release. [*See* Record No. 167, p. 11.] He reports that he has participated in numerous educational and drug rehabilitation programs while in custody. And he provides certificates of completion from two courses: Drug Education Program (March 19, 2019) and Brain Health as You Age (March 3, 2022). Coleman also indicates that he has a plan to reside in Lexington, Kentucky upon release and wishes to help other drug addicts.

While commendable, these efforts, either alone or in combination with Coleman's other arguments, do not constitute extraordinary and compelling reasons for a sentence reduction. Defendants are expected to take advantage of BOP programming, not only for their own personal development while in custody, but for an improved transition to the community upon release. The Court encourages Coleman to continue participating in the array of program opportunities that are available for inmates.

### III.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** that the defendant's motion for compassionate release [Record No. 167] is **DENIED**.

Dated: December 28, 2022.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky