UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | Criminal Action No. |
| | ) | 5:16-cr-67-DCR-MAS |
| v. | ) | and |
| | ) | Civil Action No. |
| STANFORD RAY COLEMAN, | ) | 5:22-cv-525-DCR-MAS |
| | ) | |
| Defendant/Movant. | ) | |

**REPORT & RECOMMENDATION**

This matter is before the undersigned on Petitioner Stanford Ray Coleman's ("Coleman") Motion to Vacate, Set Aside or Correct a Sentence pursuant to 28 U.S.C. § 2255. Coleman presents a single issue contending his appellate counsel was ineffective for failing to challenge his enhancement as a career offender under *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019). [Docket Entry ("DE") 185]. The United States responded in opposition [DE 192] and Coleman replied in further support [DE 195]. After thoroughly reviewing the record in its entirety, the Court recommends Coleman's petition be granted.

### I. RELEVANT FACTUAL BACKGROUND

The grand jury indicted Coleman in August 2016, followed by a Superseding Indictment in August 2017, charging him with a single count of conspiring with others to distribute oxycodone in violation of 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. § 846. [DE 32].

After an extensive pretrial motion practice, including a competency evaluation and Coleman's decision to proceed *pro se*, the Court conducted a jury trial in December 2017, at which Coleman was convicted. [DE 79, 82, 84, 86]. The Court sentenced Coleman to 340 months imprisonment with eight years of supervised release to follow. [DE 120, 123]. The sentence was

based upon, in part, the Court's determination that Coleman was a career offender under United States Sentencing Guidelines ("Guidelines" or "USSG") § 4B1.1(b)(2). [DE 129, 137]. Specifically, the Court found that Coleman was at least 18 years old at the time of his offense, the instant offense was a controlled substance offense, and Coleman had two prior controlled substance offense convictions. [DE 129, Page ID# 493; DE 137, Page ID# 1052-54]; USSG § 4B1.1(b)(2). The Court entered its Judgment on March 26, 2018. [DE 123].

Two days following the entry of judgment against him, Coleman timely filed his notice of appeal. [DE 124]. There was extensive motion practice before the Sixth Circuit that delayed the ultimate briefing on the merits of Coleman's appeal. On June 6, 2019, during the pendency of his appeal but before his brief was filed, the Sixth Circuit issued its opinion in *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019). Coleman eventually filed his appellate brief on June 1, 2020. [Appellate Entry ("AE") 106]. The United States filed its response to Coleman's appeal, and Coleman filed his reply brief. [AE 107, 108]. Neither party raised the issue of *Havis* or its progeny. Coleman's appeal was submitted on the briefs on September 15, 2020. [AE 110]. The Sixth Circuit issued its opinion affirming the judgment against Coleman on November 17, 2020. [AE 114].

## II.     ANALYSIS

In his petition, Coleman contends his appellate counsel, Louis Rom ("Rom"), was ineffective for failing to argue that he was not a career offender under *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019). The Court will examine the legal standard that governs this issue, the legal background of *Havis* and its progeny, and then turn to the merits of Coleman's ineffective assistance of counsel claim.

A.   **LEGAL STANDARD**

Under § 2255, a federal prisoner may obtain relief if his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255(a); *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003) ("In order to prevail upon a § 2255 motion, the movant must allege as a basis for relief: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'") (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)). A constitutional basis for § 2255 relief requires "an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

One class of alleged constitutional error is ineffective assistance of counsel in violation of the Sixth Amendment. The standard outlined in *Strickland v. Washington*, 466 U.S. 668 (1984), governs ineffective assistance of counsel claims. To prevail, a movant must prove (1) that defense counsel's performance was deficient, and (2) that the demonstrated deficiency prejudiced the movant. *Id*. at 687. To establish deficient performance, a movant must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 687–88. "Judicial scrutiny of counsel's performance must be highly deferential[,]" and the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. A prejudice showing requires a "reasonable probability that, but for counsel's errors, the judicial outcome would have been different." *Id*. at 694–95. The Court "must consider the totality of the evidence" in assessing prejudice. *Id*. at 695. The movant must satisfy both prongs of the *Strickland* analysis, but courts need "not address both components of the

3

deficient performance and prejudice inquiry 'if the defendant makes an insufficient showing on one.'" *Id*. at 730; *Strickland*, 466 U.S. at 697.

**B.    LEGAL BACKGROUND OF *HAVIS* AND ITS PROGENY**

Coleman argues Rom was ineffective for failing to raise that Coleman was no longer a career offender based upon the Sixth Circuit's decision in *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019).[1] Before the Court turns to Coleman's claim of ineffective assistance of counsel, the Court will examine the holding in *Havis* and its progeny.

*Havis* concerns a person's designation as a career offender under the Guidelines. USSG § 4B1.1 defines when a defendant is categorized as a career offender, a designation that increases a defendant's sentencing guideline range. Subsection (a) of that provision provides that:

> [a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

The term "controlled substance offense," whether used in describing the instant offense or prior felony convictions, is defined in USSG § 4B1.2(b):

> The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

---

[1] As the Sixth Circuit set forth in *United States v. Bullard*, a defendant may not seek habeas relief under a collateral attack for a miscalculation of his Guidelines ranges. 937 F.3d 654 (6th Cir. 2019). In *Bullard*, as discussed in more detail below, the Sixth Circuit held that Bullard "cannot use § 2255—or our decision in *Havis*—to attack collaterally his designation as career offender under the Sentencing Guidelines. Both are best left for direct review." *Id*. at 661. Coleman does not make a collateral attack at the judgment but only a claim for ineffective assistance of appellate counsel, something *Bullard* concludes a defendant can pursue considering *Havis*. *Id*. at 661-63.

USSG § 4B1.2(b).

In *Havis*, the Sixth Circuit examined whether a prior Tennessee state conviction for a crime whose elements included actual *or attempted* distribution of controlled substances qualified as a controlled substance offense under USSG § 4B1.2(b). Havis was previously convicted under Tennessee law for delivery of drugs under TENN. CODE ANN. § 39-17-417(a)(2)-(3). *Havis*, 927 F.3d at 384.

> Under Tennessee law, "delivery" of drugs means "the actual, constructive, or *attempted* transfer from one person to another of a controlled substance." *Id*. § 39-17-402(6) (emphasis added)." *Id*. Havis therefore argued that his Tennessee conviction was not a controlled substance offense because it encompassed the mere *attempt* to sell cocaine, and the Guidelines' definition of "controlled substance offense" does not include attempt crimes. *See* USSG § 4B1.2(b).

*Id*. (emphasis in original). The issue before the Sixth Circuit was juxtaposition between the definition of a controlled substance offense per USSG § 4B1.2(b), which did not include an attempt crime, and the application note to USSG § 4B1.2(b) that did include an attempt crime. "[T]he [Sentencing] Commission used Application Note 1 to add an offense not listed in the guideline. But application notes are to be 'interpretations of, not additions to, the Guidelines themselves.'" *Id*. at 386 (quoting *United States v. Rollins*, 836 F.3d 737, 742 (7th Cir. 2016)). Ultimately, the Sixth Circuit agreed with Havis and held that crimes not expressly listed in USSG § 4B1.2(b), such as attempt crimes, did not qualify as controlled substance offenses.[2]

---

[2] This conclusion rested in part on the Court's categorial approach to statutory construction:

> Employing the categorical approach, we do not consider the actual conduct that led to Havis's conviction under the Tennessee statute at issue; instead, we look to the *least of the acts criminalized* by the elements of that statute. *Moncrieffe v. Holder*, 569 U.S. 184, 190–91, 133 S.Ct. 1678, 185 L.Ed.2d 727 (2013). If the least culpable conduct falls within the Guidelines' definition of "controlled substance offense," then the statute categorically qualifies as a controlled substance offense. But if the least culpable conduct falls

Just under a year later, the Sixth Circuit clarified that *Havis* was not just limited to attempt crimes. In *United States v. Butler*, the appellate court stated clearly that conspiracy crimes, like attempt crimes, no longer qualify as a controlled substance offense under USSG § 4B1.2(b). 812 Fed. App'x 311, 314 (6th Cir. 2020). "Butler relies on our decision in *Havis* to argue that, because conspiracy crimes are not listed in the text of § 4B1.2(b), his conspiracy conviction cannot qualify as a 'controlled substance offense.' As the government concedes, Butler is right." *Id*.

Two months later, in *United States v. Stephens*, the Sixth Circuit again affirmed that *Havis* applied to all types of inchoate crimes, including conspiracy charges. 812 Fed. App'x 356, 357 (6th Cir. 2020). "The government concedes that Stephens no longer qualifies as a career offender under the reasoning of *Havis*. Here the underlying conviction is for conspiracy to distribute cocaine, 21 U.S.C. § 846, and the career offender guideline does not mention conspiracy offenses either, U.S.S.G. § 4B1.2(b)." *Id*.

In September 2020, a couple months after *Butler* and *Stephens*, the Sixth Circuit again affirmed the broad application of *Havis* in *United States v. Cordero*, 973 F.3d 603, 608 (6th Cir. 2020), the first published decision to do so. "Although the specific facts of *Havis* involved an attempt crime, its reasoning applies with equal force to other inchoate crimes not listed in the text of § 4B1.2(b). Accordingly, we have acknowledged that, in light of *Havis*, conspiracy to distribute controlled substances is not a 'controlled substances offense' under § 4B1.2(b)." *Cordero*, 973 F.3d at 626 (internal citations and quotation marks omitted).

---

> outside that definition, then the statute is too broad to qualify, and the district court erred by increasing Havis's offense level.
>
> The parties agree that the least culpable conduct covered by § 39-17-417 is the attempted delivery of a controlled substance.

*Havis*, 927 F.3d 382, 384–85.

In summary, *Havis* stands for the proposition that a "controlled substance offense" under USSG § 4B1.2(b) must be for a crime expressly included in that definition resulting in the exclusion of all inchoate crimes, such as attempt and conspiracy.

C. **DEFICIENT PERFORMANCE**

The United States stresses that Coleman cannot meet the first element of *Strickland*.[3][4] The government argues that Rom's performance was not deficient in failing to raise *Havis* because Rom used his professional judgment to "focus[] his efforts on challenging Coleman's conviction on several grounds" and "chose not to raise a *Havis* issue" because "*Havis*, as issued, invalided only attempt crimes." [DE 192 at Page ID# 1864].

The question is whether Rom's decision not to raise *Havis* "was not merely below average, but rather that it 'fell below an objective standard of reasonableness.'" *United States v. Dado*, 759 F.3d 550, 563 (6th Cir. 2014) (quoting *Strickland*, 466 U.S. at 688). Courts "employ a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. (quoting *Strickland*, 466 U.S. at 689); *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). However, such a presumption concerns strategic decisions in representing

---

[3] The United States also contends Rom was not deficient for failing to raise *Cordero* because Coleman was procedurally barred from raising *Cordero*. "Although *Cordero* was decided while Coleman's appeal was pending, Coleman's appellant brief was already filed, and counsel could not raise a new issue in a reply brief or in a 28(j) letter. *See United States v. Campbell*, 279 F.3d 392, 401 (6th Cir. 2002); *Carter v. United States*, 820 F. App'x 392, 395 (6th Cir. 2020)." [DE 192, Page ID# 1865]. The Court agrees with the United States that Rom could not raise *Cordero* in his reply, though the Court notes it is because his reply brief was due (and filed) 48 days before *Cordero* was issued.[3] [AE 105 and 108]. Though Coleman mentions *Cordero* as additional proof of counsel's ineffectiveness in his failure to raise *Havis*, Coleman does not make any argument about his counsel's failure to raise *Cordero* or make a FED. R. APP. P. 28(j) motion, thus the Court need not address it.

[4] The United States does not argue that Coleman waived his objection to his status as a career criminal. Coleman, who represented himself throughout the case, did not "explicitly agree" that the sentencing enhancement applied through some written filing or firmly expressed agreement with the Court's finding the enhancement applied. *United States v. Sheffey*, 818 Fed. App'x 513, 517 (6th Cir. 2020).

7

the client, such as decisions about what lines of questioning to pursue with a witness. *Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002). Rom's decision not to raise *Havis* was an error, not a strategic decision.

The United States, however, stresses that this must have been a strategic decision because Rom wrote a letter to Coleman in which he addressed *Havis*, and that his "philosophy on briefs is to present the strongest issues that put you in position for reversal." [DE 187-2 at Page ID# 1852]. Rom continued, stating that he did not raise *Havis* in Coleman's appellate brief because "after researching the language of Kentucky [*sic*] for trafficking it was different than the Tennessee statute which contained criminal attempt language." [DE 187-2 at Page ID# 1852]. Rom specifically states he chose not to raise *Havis* "after researching" the language of the *Kentucky state statute* that served as one of Coleman's predicate offenses. Rom does not suggest, in this letter or his affidavit filed with the government's brief, that he conducted any research or made any strategic decision regarding the *instant federal conspiracy offense*. [DE 187-2 and 193-1]. In fact, in Rom's affidavit, written two and a half years later, the issue still seems to elude his grasp. There, Rom states that his discussions with Coleman "did include the sentence enhancement based upon his prior convictions and I advised the prior convictions were applicable for enhancement purposes." [DE 193-1 at Page ID# 1872]. Nowhere, then or now, does Rom recognize that Coleman's 2016 federal conviction—the instant offense—was the offense he should have challenged as failing to meet career offender status after *Havis*.

The United States attempts to suggest that *Havis* was somehow limited to mere attempt crimes, the actual facts of *Havis*. The United States argues Rom's letter to Coleman establishes "[c]ounsel was aware of this distinction" between the attempt crime in *Havis* and Coleman's conspiracy conviction, and "chose not to raise a *Havis* issue on those grounds." [DE 192 at Page

8

ID# 1864]. The problem for the United States and Rom is the Sixth Circuit never suggested in *Havis*, *Butler*, *Stephens*, *Cordero*, and others that *Havis* was limited to the facts of that case. Rather, the holding in *Havis* was that any crimes not expressly included in USSG § 4B1.2(b), despite what was listed in the commentary, could not be included in the definition of a controlled substance offense. In fact, in *Butler*, the Sixth Circuit plainly said as much. "Our decision in *Havis* provides that crimes not expressly identified in the text of § 4B1.2(b) cannot be added by the Sentencing Commission through commentary to the Guidelines. Although the specific facts of *Havis* involved an attempt crime, its reasoning applies with equal force to other inchoate crimes not listed in the text of § 4B1.2(b)." 812 Fed. App'x at 314. Also, it should be noted, in both *Butler* and *Stephens*, the United States conceded that *Havis* was not limited to the facts of that case. *Butler*, 812 Fed. App'x at 314 ("Butler relies on our decision in *Havis* to argue that, because conspiracy crimes are not listed in the text of § 4B1.2(b), his conspiracy conviction cannot qualify as a "controlled substance offense." As the government concedes, Butler is right."); *Stephens*, 812 Fed. App'x 357 ("The government concedes that Stephens no longer qualifies as a career offender under the reasoning of *Havis*.").

Even worse, Rom's appellate brief challenged both Coleman's conviction and his sentence, removing any doubt that in Rom's professional judgment, it was prudent to attack the conviction to "put [Coleman] in position for reversal" and, should that fail, to attack the sentence. More specifically, Rom chose to attack the 21 U.S.C. § 851 sentencing enhancement that applied to Coleman, despite acknowledging in the brief that "the current state of law may well be contrary to his position but is convinced the 'sands will shift' to his position requiring jury findings for sentence enhancement based upon the reasons set forth in <u>Alleyne v. United States</u>" but did not chose to attack the career offender enhancement. [Appellant Brief, AE 106 at Page 39]. At the

9

time Rom filed the brief, the law regarding the § 851 enhancement was squarely against him, but the law regarding the career offender enhancement, as applied to conspiracy crimes, was squarely in his favor. Though the Court had yet to publish a case on the issue, there was ample unpublished case law from the Sixth Circuit demonstrating that the issue was not only worth raising, but very likely to be decided in Coleman's favor.

Had Coleman raised a *Havis* challenge on direct appeal, the Sixth Circuit would have almost certainly vacated his sentence and remanded the case for resentencing without the career offender enhancement. That is, in fact, what the Sixth Circuit did in numerous cases decided while Coleman's appeal was pending and prior to the filing of his brief. The decisions in cases such as *Stephens*, *Butler*, *Cordero*, and *Sibert*, discussed in detail *infra*, all consistently demonstrate just how far below the objective standard of reasonableness Rom's representation was.

Although "[a]ppellate counsel does not have an obligation to raise every possible claim that a client may have," *Dufresne v. Palmer*, 876 F.3d 248, 257 (2017), and "the process of winnowing out weaker arguments on appeal is the hallmark of effective appellate advocacy[,] . . . when ignored issues are clearly stronger than those presented . . . the presumption of effective assistance of counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). *Havis* was the obviously, "clearly stronger" issue to present to the Sixth Circuit—not based on this Court's 20/20 hindsight, but based on the facts before Rom at the time. Many other attorneys at the same time used *Havis* to successfully challenge a career offender enhancement based on a conspiracy conviction. The United States in both *Stephens* and *Butler* acknowledged a conspiracy conviction would not serve as a basis for a career-offender enhancement. As discussed below, even Sibert, a pro se prisoner-appellant, determined that *Havis* applied to his case and aggressively pursued relief on that basis—relief that

10

he ultimately obtained. Although the Court is "highly deferential" and gives a "strong presumption" to Rom's choices as counsel, such a clear omission cannot be ignored. Rom should have raised *Havis* in Coleman's appeal. The Court finds Coleman has established that Rom's omission fell below an objective standard of reasonableness.

D.   **PREJUDICIAL EFFECT**

The Court next turns to whether Coleman can establish that Rom's failures prejudiced him. This requires a two-part analysis: First, if Rom had raised *Havis*, is there a "reasonable probability" that Coleman's appeal would have been successful? *Strickland*, 466 U.S. at 694-95 (holding that a showing of prejudice requires a "reasonable probability that, but for counsel's errors, the judicial outcome would have been different"). Or stated another way, would the appeals court have found that his sentencing calculation was "plain error"? Second, if Coleman had prevailed on the issue of his career offender designation, would the error have been harmless, thus negating the need for resentencing?

Coleman answers the first question in the affirmative and the second in the negative. However, in the focus of its response, the United States argues that the Sixth Circuit would have rejected any argument raised by Coleman regarding *Havis*. [DE 192, Page ID# 1866-67]. Per the United States, "[n]o error would have been uncovered on appellate review." [DE 192, Page ID# 1867]. A series of cases decided during the pendency of Coleman's appeal, however, demonstrate that the United States is incorrect.

For example, in *United States v. Stephens*, the defendant was convicted of conspiring to distribute controlled substances, and that conviction was, in part, the basis of the trial court sentencing him as a career offender. *United States v. Stephens*, 812 Fed. App'x 356, 357 (6th Cir. 2020). While on appeal, the Sixth Circuit issued the *Havis* decision. *Id*. Despite the trial court correctly calculating his Guidelines range based upon then existing law, the Sixth Circuit vacated

11

the sentence and remanded for resentencing. *Id*. The Court found that *Havis* negated the career offender designation because "the underlying conviction [was] for conspiracy to distribute cocaine, 21 U.S.C. § 846, and the career offender guideline does not mention conspiracy offenses either, U.S.S.G. § 4B1.2(b). . . . In light of the government's concession, we vacate and remand for resentencing." *Id*.

In another example, *Havis* was decided less than two weeks after the defendant filed his appeal in *United States v. Butler*, No. 19-1587. Butler was convicted of conspiracy conspiring to distribute drugs, just as Coleman was. *United States v. Butler*, 812 Fed. App'x 311 (6th Cir. 2020). But unlike Coleman, Butler made a *Havis* argument, insisting that *Havis* extended to conspiracy crimes. *Id*. at 314. The Sixth Circuit agreed, holding that because "the Guidelines' definition of 'controlled substance offense' does not include conspiracy crimes, the district court erred in basing Butler's career offender designation on his conspiracy conviction." *Id*. at 314–15. The Court did not remand for resentencing because the trial court, acknowledging that the then-pending decision in *Havis* could affect Butler's career-offender status, specifically stated that Butler's sentence was not based on the career offender enhancement, and it would have sentenced Butler the same regardless of the application of the enhancement. *Id*. at 315.

*United States v. Sibert* is a particularly convincing comparison. *United States v. Sibert*, No. 17-6005, 2019 U.S. App. LEXIS 34213 (6th Cir. Nov. 15, 2019). Sibert, like Butler and Coleman, was sentenced as a career offender upon his conviction for conspiring to distribute drugs in violation of 21 U.S.C. §§ 841(a)(1) and 846. *Id*. Sibert, proceeding *pro se*, filed his appellant brief in October 2018. *United States v Sibert*, No. 17-6005, AE 54. In March 2019, Sibert, again *pro se*, asked the Sixth Circuit to hold his case in abeyance pending the *Havis* decision. The Court did not rule on the motion to stay prior to its decision in *Havis*. Less than two weeks after the

*Havis* decision, Sibert moved to withdraw the motion for a stay, due to the *Havis* decision. In that motion, Sibert argued that "[i]n light of *Havis*, Appellant's career offender enhancement is clearly erroneous. . . . The Sixth Circuit has held that because the Commission bypassed the standard procedures to amend guidelines, by adding offenses to the definition of 'controlled substance offense' through commentary rather than through a formal amendment, these three inchoate offenses no longer qualify as controlled substance offenses." *United States v Sibert*, No. 17-6005, AE 54 at Page 2. In response to this motion, the Sixth Circuit directed the parties to file additional briefs on the *Havis* issue. *United States v Sibert*, No. 17-6005, AE 78. Both parties did so, and on November 15, 2019, the Court vacated Sibert's sentence and remanded to the district court for resentencing considering *Havis*. *United States v. Sibert*, No. 17-6005, 2019 U.S. App. LEXIS 34213 (6th Cir. Nov. 15, 2019). The Court held that "because *Havis* holds that attempt and conspiracy offenses do not qualify as 'controlled substance offenses' under § 4B1.2, Sibert can no longer be classified as a career offender in light of *Havis*. We agree." *United States v. Sibert*, 2019 U.S. App. LEXIS 34213, at *4 (6th Cir. Nov. 15, 2019).

And of course, in *Cordero*, the Sixth Circuit officially extended the holding of *Havis* to conspiracy charges in its first published case on the issue. The Court vacated the sentence and remanded to the district court for the resentencing of Cordero's codefendant, Eduardo Velasquez. *United States v. Cordero*, 973 F.3d 603, 626 (6th Cir. 2020). *Havis* was issued less than two weeks prior to Velasquez's appeal. *Id*.

The United States does not address these cases; rather, it falls back on the "plain error" standard. "Regardless, even if counsel should had [*sic*] raised a *Havis* issue on appeal, Coleman cannot show prejudice. Coleman's attack on his career offender status, raised for the first time on appeal, would have been reviewed under the plain error standard." [DE 192, Page ID# 1866]. In

13

support, the United States cites *United States v. Bullard*, 937 F.3d 654 (6th Cir. 2019). However, in *Bullard*, the habeas challenge was made about trial and appellate counsel's failure to raise *Havis* nearly three years before *Havis* was issued. "At that time, our decision in *Evans* held the opposite" of the *Havis* decision, "[a]nd we have repeatedly held that counsel is not ineffective for failing to predict developments in the law." *Bullard*, 937 F.3d at 661. In contrast, the precedent of *Havis* was binding precedent during the pendency of Coleman's appeal, prior to the filing of his brief.

The United States correctly noted that "[a]n error is plain if it is obvious at the time of appellate consideration." [DE 192 at Page ID# 1867, citing *United States v. Ritchey*, 840 F.3d 310, 314 (6th Cir. 2016)]. The United States also correctly advocated that there must be a "reasonable probability that, but for the error, [the defendant] would have received a more favorable sentence." [DE 192 at Page ID# 1866-67 (citing *United States v. Hatcher*, 947 F.3d 383, 394 (6th Cir. 2020)]. The United States is mistaken, however, in its argument that "[n]o error would have been uncovered on appellate review[]" because "[a]t the time of briefing, *Havis* only applied to 'attempt crimes.'" [DE 192 at Page ID# 1867]. The Sixth Circuit directly addressed how it assesses "plain error" in an extremely similar case where the defendant used *Havis* to successfully challenge his predicate conviction for an "offer to sell" controlled substances. *United States v. Cavazos*, 950 F.3d 329, 337 (6th Cir. 2020). There, the Sixth Circuit said:

> When the district court sentenced Serrano, the court was clearly correct in finding that § 4B1.2's definition of controlled substance offenses included offers to sell controlled substances. . . . But after the district court sentenced Serrano, and before this appeal, we decided *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (en banc).
>
> . . .
>
> As the law stands today, it is clear or obvious error to find § 481.112 categorically qualifies as a "controlled substance offense" under § 4B1.2.3
>
> Despite the language of the plain error standard—which suggests that the error must have been clear or obvious at the time of the district court's ruling—the Supreme

> Court has instructed that in situations like this, "where the law at the time of trial was settled and clearly contrary to the law at the time of appeal[,] it is enough that an error be 'plain' at the time of appellate consideration*." Johnson v. United States*, 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). Because it would be clear or obvious error today for the district court to enhance Serrano's offense level under § 4B1.1 based on a predicate conviction under § 481.112, we find the first two elements of the plain error standard satisfied. With all four of the plain error elements satisfied, we vacate Serrano's sentence and remand for resentencing.

*Cavazos*, 950 F.3d 329, 336-37.[5] *Cavazos* demonstrates that the Sixth Circuit would have found plain error in Coleman's sentence, even though the district court indisputably calculated the Guidelines range correctly as the law stood at Coleman's sentencing. This error in calculating the "advisory Guidelines range does not end [the] analysis: we must still decide whether the error was harmless. *See* FED. R. CRIM. P. 52(a). It is the government's burden to prove harmlessness." *United States v. Butler*, 812 F. App'x 311, 315 (6th Cir. 2020). To prevail, the United States must demonstrate "with certainty" that the sentencing error did not result in a more severe sentence. *Id*. (quoting *United States v. Gillis*, 595 F.3d 696, 699 (6th Cir. 2009).

> This is a heavy burden and, "[i]n the usual case, . . . the systemic function of the selected Guidelines range will affect the sentence." *Molina-Martinez v. United States*, —— U.S. ——, 136 S. Ct. 1338, 1346, 194 L.Ed.2d 444 (2016). Nevertheless, we have consistently found that errors in calculating a defendant's Guidelines range are harmless if the "district court made clear that 'it would have given [the defendant] the same sentence' even if it had started" from the properly-calculated range. *United States v. Collins*, 800 Fed.Appx. 361, 362 (6th Cir. 2020) (alteration in original) (quoting *United States v. Bishop*, 797 F. App'x 208, 212 (6th Cir. 2019)).

*Id*.

The United States cannot meet this heavy burden in Coleman's case. With his designation as a career criminal, Coleman's sentencing Guideline ranges was 262-327 months. [DE 129, Page ID# 500]. This is not a case where the District Court said it was imposing a sentence regardless

---

[5] Cavazos was decided on February 12, 2020, four months before Coleman's brief was filed, offering more proof of the ineffectiveness of Rom and the resulting prejudice Coleman suffered because of it.

15

of the Guidelines range and any enhancements, as the Court did in *Butler*. *See Butler*, 812 Fed. App'x at 313-14 (affirming the sentence where *Havis* would have negated Butler's career criminal enhancement because the district court made specific findings that it intended to impose the sentence "even if Butler was not a career criminal"). Rather, the District Court carefully explained how it was utilizing the Guidelines—including and especially the career offender enhancement—to form Coleman's sentence:

> The guideline calculations begin in this case at paragraph 19, which indicates that the 2016 edition of the guideline manual has been used. His base offense level in the case is level 30. However, because defendant has at least two prior felony convictions of either crimes of violence or controlled substance offenses, he's determined to be a career offender under the United States Sentencing Guidelines. That has the affect of increasing the base offense level to a level 34.
>
> . . .
>
> Based upon those convictions, he has a total eight criminal history points, which would ordinarily place him in Criminal History Category IV, but because he is deemed to be a career offender under the guidelines, under Section 4B1.1(b), his criminal history category is increased to VI. And based upon those calculations, his guideline range for imprisonment is a range of 262 to 327 months.

[DE 137 at Page ID# 1053]. The Court continued, noting how the Guidelines impacted his ultimate decision to sentence Coleman to 340 months:

> So let me again note that in imposing a sentence in the case I first begin from the properly calculated guideline range.
>
> The guideline range is not binding in this particular case, but it is a starting point.
>
> I will tell you that typically my starting point is somewhere in the middle of the guidelines. Now, that is for obvious, logical reasons. Many times a guideline sentence is appropriate, and I consider the factors of 3553 in determining where to go within a particular guideline range.
>
> . . .
>
> Many times, however, or sometimes, I should say, a guideline sentence is it not appropriate. The Court then considers whether a variance is appropriate. It can be a downward variance, below the range, or it can be an upward variance.
>
> . . .

16

> And a sentence at the very top of the guidelines, or the statutory maximum, would appear to be necessary to provide just punishment and meet these qualifications of these criteria.
>
> . . .
>
> Now, would it be an unwarranted sentencing disparity to sentence you at the top of the range or perhaps above the range? When we look at statistical information, we find that federal judges often in large percentages depart from the guidelines or vary from the guidelines for career offenders for a variety of the reasons that are particular to an individual case.
>
> . . .
>
> So for those reasons what I've determined to do is I'm going to go above your guideline range, a little bit, not all the way to the top. I'm going to go up to 340 months in your case because you're not the typical offender. You're the person that typically should be sentenced at the top of the range because even those individuals have some redeeming qualities, and I can't find any for you. So I do think that a sentence above the guideline range is certainly appropriate for the reasons that I've discussed at length[.]

[Sentencing Transcript, DE 137 at Page ID# 1085-86; 1092; and 1096].

There can be no doubt from the sentencing transcript that the District Court relied heavily on the Guidelines, particularly the career offender enhancement, in crafting Coleman's sentence. As noted at sentencing, if Coleman was not designated as a career criminal, his offense level would have been 30 and his criminal history would have been Category IV. His resulting Guidelines range would have been 135-168 months. USSG § Ch. 5, Part A (2016). If the District Court again varied upwards by 13 months, the resulting sentence would have been 181 months, 81 months below the lowest end of his prior Guidelines range and 159 months below his current sentence. Even if the District Court exceeded Coleman's Guidelines by *double the highest end* of the Guidelines range—and there is no indication from the sentencing transcript that the District Court thought such an extreme variance was appropriate ("I'm going to go above your guideline range, a little bit, not all the way to the top")—his sentence would still be below Coleman's current sentence of 340 months. [DE 137 at Page ID# 1096]. Contrary to the United States' argument

17

that the sentence would have been the same regardless of the career offender enhancement, the Court's reliance on the Guidelines as a "starting point" and the sizable Guidelines disparity if Coleman was not designated a career offender illustrates this was not the case. Because the government has not "demonstrate[d] 'with certainty that the error . . . did not cause the defendant to receive a more severe sentence[,]'" the Court finds the prejudice prong of *Strickland* has been met, and recommends Coleman's sentence be vacated and he be resentenced without the career offender enhancement. *United States v. Butler*, 812 F. App'x 311, 315 (6th Cir. 2020) (quoting *United States v. Gillis*, 592 F.3d 696, 699 (6th Cir. 2009)).

E.  **REQUEST FOR HEARING**

At the conclusion of his petition, Coleman requests a hearing "if the Court deems it necessary." [DE 185, Page ID# 1838]. He adds, however, "that in this case Defendant submits that a hearing is unnecessary because the facts on record demonstrate ineffective assistance of appellate counsel and prejudice." [DE 185, Page ID# 1838]. The United States agrees "'there is no reason to conduct an evidentiary hearing to resolve,' as here, 'a purely legal issue.'" [DE 192 at Page ID# 1869]. The Court agrees with the parties that a hearing is unnecessary.

The Court must conduct an evidentiary hearing on Coleman's claims "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). *See also* Rule 8(a) of the Rules Governing Section 2255 Cases in the United States District Courts (directing the Court to examine the filings and record "to determine whether an evidentiary hearing is warranted"). The Court must hold a hearing where the petitioner raises a factual dispute underlying his claims, and "[t]he burden for establishing an entitlement to an evidentiary hearing is relatively light[.]" *Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018). Here, the question presented is a primarily a legal one, and the Court wholly relied upon

the undisputed facts in the record to reach its recommendation. Accordingly, the Court does not find a hearing is necessary.

### III. CONCLUSION

For the reasons set forth herein, the Court finds that Coleman's appellate counsel's performance was deficient when he failed to raise a *Havis* argument in his brief. The Court finds this was not a justifiable strategic decision, but an oversight that fell below an objective standard of reasonableness. The Court further finds counsel's deficient performance prejudiced Coleman, because had counsel raised the *Havis* issue on appeal, Coleman would have almost certainly prevailed. Finally, the United States has not demonstrated that the sentencing error was harmless because the District Court specifically relied upon the career offender enhancement in crafting Coleman's sentence.

Thus, the Court **RECOMMENDS t**he District Court **GRANT** Coleman's Motion to Vacate, Set Aside, or Correct his sentence pursuant to 28 U.S.C. § 2255 [DE 185], **VACATE** Coleman's sentence, and schedule this matter for resentencing.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of said statute. As defined by § 636(b) (1), Fed. R. Civ. P. 72(b), Fed. R. Crim. P. 59(b), and local rule, within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court.

Entered this the 7th day of February, 2023.

*Matthew A. Stinnett*
MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY